FILED

SEP 14 2026

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY MM DEP CLK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NORTH CAROLINA

WESTERN DIVISION

| | |
|---|---|
| **PATRICK J. CAMPBELL,**<br>Plaintiff,<br><br>v.<br><br>**UNITED PARCEL SERVICE, INC.,**<br>and<br>**TEAMSTERS LOCAL 391,**<br>Defendants. | Civil Action No. 5:26-cv-00673-D<br><br>**VERIFIED COMPLAINT**<br>(29 U.S.C. § 185)<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Patrick J. Campbell, proceeding pro se, complains of Defendants United Parcel Service, Inc. ("UPS") and Teamsters Local 391 ("Local 391" or "the Union") as follows:

## NATURE OF THE ACTION

1. This is a hybrid action under §301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185, arising from UPS's breach of a grievance settlement and the collective-bargaining agreements governing Plaintiff's employment, together with Local 391's breach of its federal duty of fair representation in enforcing those rights.
2. On or about January 10, 2025, UPS, Local 391, and Plaintiff resolved Plaintiff's discharge grievance through a written settlement reducing Plaintiff's termination to a time-served suspension and providing for his return to work.
3. Plaintiff entered that settlement understanding that he would return to his existing bid AM Air Shuttle Driver position rather than surrendering or rebidding that position.
4. That understanding was consistent with representations made during the settlement process, the language and circumstances of the settlement, and the parties' handling of a prior similarly worded settlement under which Plaintiff had previously been restored to his bid air-driver position.
5. UPS subsequently refused to restore Plaintiff to that bid position even though the air-shuttle work continued to be performed.

6. Plaintiff repeatedly sought Local 391's assistance in enforcing the settlement and restoring his bid.

7. The dispute ultimately reached a March 12, 2026 grievance-panel proceeding, but the settlement-enforcement issue Plaintiff had sought to have decided was not fairly submitted and presented for adjudication.

8. When Plaintiff attempted to present evidence bearing directly upon the settlement, UPS objected and Local 391 acquiesced in the exclusion and withdrawal of material evidence without Plaintiff's authorization.

9. Local 391 subsequently acknowledged that the settlement-violation issue had not been included in the issue submitted to the panel, but failed to obtain an effective determination of that omitted issue.

10. Local 391 also failed to advance multiple pending grievances through the contractual grievance procedure and later advised Plaintiff, through steward Kevin Coats, that substantially all of Plaintiff's pending grievances were being closed or withdrawn without Plaintiff having authorized their abandonment.

11. Plaintiff seeks relief against UPS for breach of the enforceable labor settlement and against Local 391 for conduct that arbitrarily and/or in bad faith frustrated the contractual procedure through which Plaintiff was required to seek relief.

## PARTIES

12. Plaintiff Patrick J. Campbell is an employee of UPS and at all material times was represented for collective-bargaining purposes by Teamsters Local 391.

13. Before the events at issue, Plaintiff held a bid AM Air Shuttle Driver position associated with UPS's Cary, North Carolina operation.

14. Defendant United Parcel Service, Inc. is an employer engaged in interstate commerce and is a party to collective-bargaining agreements governing Plaintiff's employment.

15. Defendant Teamsters Local 391 is a labor organization and was Plaintiff's exclusive bargaining representative concerning the grievances, settlement, bid rights, and employment matters at issue.

## JURISDICTION AND VENUE

16. This Court has subject-matter jurisdiction under 29 U.S.C. §185(a) and 28 U.S.C. §1331.

17. Plaintiff's claim against UPS arises from UPS's breach of an enforceable grievance settlement and labor agreement governed by §301 of the LMRA.

18. Plaintiff's claim against Local 391 arises under the federal duty of fair representation imposed upon an exclusive bargaining representative.

19. Venue is proper in this District because a substantial part of the events giving rise to these claims occurred in Wake County, North Carolina, including Plaintiff's employment at UPS's Cary operation.

20. Wake County lies within the Western Division of the Eastern District of North Carolina.

## FACTUAL ALLEGATIONS

### Plaintiff's Bid AM Air Shuttle Position

21. Plaintiff obtained and held a bid AM Air Shuttle Driver position at UPS's Cary operation.

22. The position constituted Plaintiff's bid assignment and provided air-driving work and associated contractual wages and employment opportunities.

23. Before January 2025, Plaintiff previously had been terminated and subsequently returned to employment pursuant to another grievance settlement.

24. That earlier settlement was worded similarly in material respects concerning Plaintiff's reinstatement or return to work.

25. Following the earlier settlement, Plaintiff was restored to his existing bid air-driver position rather than being required to rebid the position or being treated as having forfeited it.

26. Plaintiff was aware of that prior course of performance and relied upon it, together with the representations made to him in January 2025, when agreeing to the January 2025 settlement.

**January 2025 Discharge Settlement**

27. In December 2024, UPS terminated Plaintiff following an automobile accident.

28. Plaintiff and Local 391 grieved the termination.

29. On or about January 10, 2025, UPS, Local 391, and Plaintiff entered a written settlement resolving the discharge grievance.

30. The settlement reduced Plaintiff's termination to a time-served suspension and provided for his return to work.

31. Nothing in the settlement stated that Plaintiff surrendered his existing bid AM Air Shuttle Driver position or agreed to rebid it.

32. During the settlement and return-to-work process, Plaintiff was advised by his Union representative that he would return in his driver role subject to completing a required safety or visibility ride.

33. UPS management subsequently advised Plaintiff in substance that he remained a bid air driver and that his bid status had not changed.

34. Plaintiff completed the required safety or visibility ride and was cleared to return to work.

**UPS Refuses Restoration**

35. Shortly thereafter, UPS informed Plaintiff that he was being laid off from air driving and did not restore him to the AM Air Shuttle Driver work he had held before his discharge.

36. UPS instead assigned Plaintiff other work, including preload work.

37. The AM Air Shuttle work nevertheless continued to be performed.

38. Other employees performed the shuttle work and/or work associated with Plaintiff's bid while Plaintiff remained denied restoration.

39. Plaintiff maintained that UPS's treatment violated the January 2025 settlement, his continuing bid rights, and the applicable collective-bargaining agreements.

40. Plaintiff repeatedly requested that Local 391 enforce those rights.

**Repeated Returns to Active Employment**

41. In or around September 2025, Plaintiff returned to work following a workers' compensation absence.

42. In or around September 2025, Plaintiff also returned to work following a period of FMLA leave.

43. Upon that return, Plaintiff again sought restoration to his bid AM Air Shuttle Driver position.

44. UPS did not restore Plaintiff to that bid assignment.

45. Plaintiff later experienced a second workers' compensation absence.

46. On or about March 11, 2026, Plaintiff returned to work from that second workers' compensation absence.

47. UPS again assigned Plaintiff to preload or other non-bid work rather than restoring him to his AM Air Shuttle Driver position.

48. Thus, UPS had multiple opportunities following Plaintiff's returns to active employment to recognize and restore the bid status Plaintiff claimed under the January 2025 settlement but did not do so.

**Union Knowledge of Plaintiff's Settlement Position**

49. Local 391 repeatedly assured Plaintiff that the January 2025 settlement would restore and preserve his existing bid air-driver position.

50. Plaintiff repeatedly requested that the Union enforce the settlement.

51. In or around October 2025, Union representative Ken Feyen confirmed to Plaintiff and Union representatives Rick Armstrong and Doug Irving that he understood the January 2025 settlement was to restore Plaintiff to his bid air-driver role and/or route.

52. Plaintiff relied upon the Union's recognition of that interpretation in continuing to pursue relief through the contractual grievance machinery rather than treating the settlement as having eliminated his bid.

53. In or around February 2026, Plaintiff again raised the issue with the Union in preparation for panel proceedings.

54. Feyen indicated that he would provide information or a witness statement supporting the settlement/restoration issue for use at panel.

55. That supporting statement was not ultimately provided to Plaintiff for presentation at the March 12 proceeding.

**Union Direction to the NLRB and Other Enforcement Efforts**

56. Plaintiff also asked Local 391 to take action to enforce the settlement directly with UPS management before or in addition to formal panel proceedings.

57. Plaintiff requested that senior Union officials escalate the matter within UPS labor management in an effort to obtain compliance with the settlement.

58. Local 391 did not obtain restoration of the bid through those informal efforts.

59. At one point, Union representative Feyen instructed Plaintiff in substance to contact the National Labor Relations Board concerning the settlement.

60. Plaintiff thereafter pursued relief through the NLRB.

61. When Plaintiff later requested that Local 391 itself file or participate in a companion labor charge concerning UPS's alleged refusal to honor the settlement, Local 391 declined to do so.

62. Plaintiff does not contend that the Union was required to employ any particular informal tactic or to file an NLRB charge merely because Plaintiff requested it.

63. These events are alleged as context demonstrating the Union's knowledge of Plaintiff's unresolved settlement-enforcement claim and Plaintiff's repeated attempts to obtain Union assistance before the March 12, 2026 panel proceeding.

**Grievances and Panel Proceedings**

64. Plaintiff filed or caused to be filed grievances seeking restoration to the AM Air Shuttle Driver position, make-whole relief, and enforcement of contractual and settlement rights.

65. One of those matters proceeded as AAPGC Case No. 557-25.

66. Plaintiff understood that the matter to be adjudicated included whether UPS had failed to honor the January 2025 settlement by refusing to restore his bid AM Air Shuttle Driver position.

67. Local 391 was responsible for fairly representing Plaintiff through the contractual grievance procedure.

68. Before the panel hearing, Plaintiff understood from Union representatives that the settlement-violation issue could and would be addressed through the panel process.

69. On March 12, 2026, AAPGC Case No. 557-25 was heard before the grievance panel.

70. Local 391 Business Agent Doug Irving represented Plaintiff in presenting the grievance.

71. UPS was represented in material part by Labor Manager DJ Favreau.

**Failure to Submit the Settlement-Enforcement Issue**

72. At or in connection with commencement of the hearing, UPS and Local 391 presented or accepted an issue statement or submission defining the matter to be decided by the panel.

73. Plaintiff had sought a determination of whether UPS had violated the January 2025 settlement by failing to restore him to his bid AM Air Shuttle Driver position.

74. The matter actually submitted did not fairly place that settlement-enforcement question before the panel for decision.

75. Plaintiff had not knowingly authorized Local 391 to abandon or omit that issue.

76. Plaintiff had relied upon Local 391 to frame and present the grievance so that the underlying settlement violation could be adjudicated.

77. Upon information and belief, the precise manner in which UPS and Local 391 formulated, negotiated, accepted, or agreed upon the issue presented to the panel is known to Defendants and is subject to discovery.

**Exclusion and Withdrawal of Settlement Evidence**

78. During Plaintiff's presentation, Plaintiff attempted to introduce evidence concerning the January 2025 settlement, the circumstances and representations surrounding his return to work, and UPS's subsequent conduct.

79. UPS, through Favreau, objected to portions of that evidence.

80. UPS asserted in substance that settlement-related evidence was inadmissible under a custom or practice of the grievance panel.

81. Plaintiff had not previously been shown a written panel rule establishing the asserted restriction.

82. The excluded materials were important to Plaintiff's effort to show the meaning of the January 2025 settlement, the parties' understanding of it, and UPS's subsequent failure to perform consistently with it.

83. Rather than adequately contesting the exclusion or preserving Plaintiff's settlement-enforcement theory, Local 391 stated in substance that it would comply with the customs of the panel.

84. Local 391 then withdrew exhibits identified as NI-24 through NI-28.

85. Plaintiff was not consulted before those exhibits were withdrawn.

86. Plaintiff did not authorize their withdrawal.

87. Local 391 did not make an adequate offer of proof preserving the substance and relevance of the withdrawn materials.

88. Plaintiff attempted to object because the excluded material included evidence upon which he relied to establish his settlement-enforcement claim.

89. Plaintiff was directed to skip portions of his planned presentation concerning that evidence and proceed with other portions of the grievance.

90. Consequently, material evidence supporting Plaintiff's settlement-enforcement position was not considered by the panel.

**Union Acknowledges the Omission**

91. On or about March 13, 2026, Plaintiff communicated with Irving concerning the issue that had actually been submitted at the hearing.

92. Those communications confirmed to Plaintiff that the settlement-violation issue had not been included in the issue submitted to the panel.

93. Local 391 therefore knew no later than that time that the contractual process had not actually placed Plaintiff's central settlement-enforcement claim before the panel.

94. Local 391 did not thereafter secure a new panel hearing, reopening, resubmission, or other effective determination of that omitted issue.

**Failure to Advance Other Pending Grievances**

95. Plaintiff also had a number of other grievances pending concerning his employment, some directly related to restoration of his bid, return-to-work treatment, compensation, and related contractual rights and others involving separate workplace disputes.

96. Some of those grievances had reached or were alleged by Plaintiff to have reached a stage at which a local-level hearing, deadlock, panel submission, or other further contractual processing was required or appropriate.

97. Plaintiff repeatedly requested that Local 391 schedule and advance pending grievances through the contractual process.

98. Local 391 failed or refused to set a number of those grievances for panel or otherwise obtain merits determinations.

99. Plaintiff did not authorize wholesale abandonment of his pending grievances.

100. On or about June 23, 2026, steward Kevin Coats informed Plaintiff in substance that Local 391 was withdrawing or otherwise closing all of Plaintiff's then-pending grievances, except for a limited payment-related grievance.

101. Plaintiff had not authorized Coats or Local 391 to withdraw all of those grievances.

102. Plaintiff sought clarification and corrective action from Union officials concerning the status of the grievances.

103. Plaintiff alleges these subsequent events both as additional conduct within the Union's representation of him and as evidence relevant to whether the March 12 handling was an isolated mistake or part of arbitrary and/or bad-faith treatment of his grievances.

**Effect Upon the Contractual Remedy**

104. Plaintiff does not base his DFR claim merely upon disagreement with Local 391's tactical judgment or the fact that a grievance produced an unfavorable outcome.

105. Rather, Plaintiff contends that Local 391:

(a) recognized that Plaintiff claimed the January 2025 settlement restored or preserved his bid;

(b) knew that Plaintiff was seeking adjudication of UPS's alleged violation of that settlement;

(c) failed adequately to frame and submit that issue for decision;

(d) acquiesced in the exclusion and withdrawal of material evidence relating to the omitted issue;

(e) failed adequately to preserve that evidence or make an offer of proof;

(f) thereafter acknowledged that the settlement issue had not been included in the submission;

(g) failed to cure the known omission by obtaining an effective adjudication of the settlement-enforcement claim;

(h) failed to advance a number of Plaintiff's other pending grievances through the agreed grievance procedure; and

(i) subsequently treated numerous pending grievances as withdrawn, closed, settled, or otherwise disposed of without Plaintiff's authorization and without adequate merits processing.

106. Taken together, Plaintiff contends that this conduct was arbitrary and/or undertaken in bad faith and fell outside the wide range of reasonableness afforded an exclusive bargaining representative.

107. Local 391's conduct materially undermined Plaintiff's ability to obtain the contractual remedy for UPS's breach.

108. To the extent additional exhaustion of the grievance procedure otherwise would have been required, such exhaustion was satisfied, prevented, frustrated, or rendered futile by Local 391's breach of its duty of fair representation.

**COUNT I**

**Breach of Labor Agreement and Grievance Settlement Under LMRA §301**

**Against United Parcel Service, Inc.**

109. Plaintiff incorporates Paragraphs 1 through 108.

110. The collective-bargaining relationship between UPS and Local 391 governed Plaintiff's employment, bid rights, grievance rights, and resolution of his discharge grievance.

111. The January 2025 grievance settlement arose from and was entered pursuant to that relationship.

112. The settlement reduced Plaintiff's discharge to a time-served suspension and provided for his return to work.

113. The settlement did not state that Plaintiff surrendered his existing bid AM Air Shuttle Driver position.

114. The parties' prior treatment of a similarly worded settlement, the representations made to Plaintiff concerning the January 2025 settlement, and the subsequent statements of UPS and Union representatives further supported Plaintiff's understanding that his existing bid remained intact.

115. Plaintiff fulfilled the return-to-work requirements imposed upon him, including the required safety or visibility ride.

116. UPS nevertheless refused to restore Plaintiff to his bid AM Air Shuttle Driver position.

117. UPS continued to have the relevant air-shuttle work performed while Plaintiff was denied his bid.

118. UPS continued that refusal through multiple periods of Plaintiff's active employment, including following Plaintiff's September 2025 return and again following his March 2026 workers'-compensation return.

119. UPS thereby breached the January 2025 grievance settlement and/or the labor agreement from which Plaintiff's enforceable bid and grievance rights arose.

120. Plaintiff suffered lost wages, benefits, progression-related losses, lost overtime or other work opportunities, and other economic injuries as a result.

## COUNT II

### Breach of Duty of Fair Representation

### Against Teamsters Local 391

121. Plaintiff incorporates Paragraphs 1 through 120.

122. Local 391 owed Plaintiff a federal duty to represent him fairly in administering and enforcing the applicable collective-bargaining agreements and grievance settlement and in processing his grievances.

123. Plaintiff recognizes that Local 391 possessed substantial discretion concerning the merits and handling of grievances and was not required to adopt every tactic requested by Plaintiff.

124. That discretion nevertheless required Local 391 to avoid arbitrary, discriminatory, and bad-faith conduct.

125. Local 391 breached that duty through the cumulative conduct described above, including its handling of the March 12, 2026 panel proceeding and its subsequent failure to correct the known omission of Plaintiff's settlement-enforcement claim.

126. Local 391's conduct was causally connected to Plaintiff's inability to obtain an effective contractual remedy for UPS's breach.

127. Plaintiff suffered economic and other legally compensable injury as a result.

### HYBRID §301 / DFR LIABILITY

128. Plaintiff alleges the two interdependent elements of a hybrid §301 action: UPS breached an enforceable labor agreement or grievance settlement, and Local 391 breached its duty of fair representation in administering the contractual remedy for that violation.

129. Local 391's breach materially undermined the integrity of the grievance procedure through which Plaintiff otherwise was required to seek relief.

130. Accordingly, any otherwise applicable contractual finality or exhaustion defense does not bar Plaintiff's §301 claim against UPS.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Enter judgment that UPS breached Plaintiff's enforceable rights under the applicable labor agreement and January 10, 2025 grievance settlement;

B. Enter judgment that Local 391 breached its duty of fair representation;

C. Award Plaintiff all lost wages, wage differentials, benefits, progression losses, lost employment opportunities, and other economic losses proven to have resulted from Defendants' respective conduct;

D. Award prejudgment and post-judgment interest to the extent permitted by law;

E. Grant appropriate equitable relief necessary to place Plaintiff in the position he would have occupied absent the violations, including an order enforcing the January 10, 2025 settlement agreement and any other appropriate relief respecting Plaintiff's rights;

F. Allocate monetary responsibility among Defendants according to the injuries legally attributable to each Defendant, including joint liability to the extent permitted by law;

G. Award allowable costs and such attorney's fees as may become recoverable if counsel subsequently appears and applicable law permits; and

H. Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted this 14th day of September, 2026.

Signature: ____________________

Patrick J. Campbell, Plaintiff Pro Se
5609 Knollwood Rd,
Raleigh
NC 27609
Patrickjcampbell2001@yahoo.comct

**VERIFICATION**

I, Patrick J. Campbell, declare under penalty of perjury that the factual statements contained in this Complaint are true and correct to the best of my personal knowledge and, where expressly stated to be based upon information and belief, I believe them to be true based upon the information presently available to me.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 14, 2026.

Signature: ______________________

Patrick J. Campbell